**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2016 MSPB 32**

Docket No. CH-1221-14-0228-W-2

**Christopher S. Scoggins,**

**Appellant,**

**v.**

**Department of the Army,**

**Agency.**

September 19, 2016

Rosemary Dettling, Esquire, and Sarah Bloom, Esquire, Washington, D.C., for the appellant.

W. Clay Caldwell, Aberdeen Proving Ground, Maryland, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

**OPINION AND ORDER**

¶1      The agency has filed a petition for review, and the appellant has filed a cross petition for review of the initial decision, which granted the appellant's request for corrective action in this individual right of action (IRA) appeal.  As explained below, the agency's petition for review and the appellant's cross petition for review are DENIED, and the administrative judge's initial decision is AFFIRMED except as expressly MODIFIED by this Opinion and Order to FIND that all of the whistleblowing disclosures at issue on review are protected, to VACATE the administrative judge's findings that the agency proved by clear and convincing evidence that it would have changed the appellant's work duties and

work location and denied him security training absent his protected disclosures, and to FIND that the agency met its clear and convincing burden regarding those personnel actions for the reasons set forth in this Opinion and Order. We AFFIRM the administrative judge's decision to order corrective action regarding the appellant's proposed removal and postponed performance evaluation.

BACKGROUND

¶2      On February 27, 2011, the agency hired the appellant as a GS-12 Security Specialist with the agency's Compliance and Surety Directorate of the Blue Grass Chemical Activity (BGCA), in Richmond, Kentucky. *Scoggins v. Department of the Army*, MSPB Docket No. CH-1221-14-0228-W-1, Initial Appeal File (IAF), Tab 1 at 1, Tab 6 at 84, 92. The BGCA is a tenant at the Blue Grass Army Depot (BGAD) and reports to the agency's Chemical Materials Activity (CMA), which is responsible for the storage of chemical weapons pending their destruction. *Scoggins v. Department of the Army*, MSPB Docket No. CH-1221-14-0228-W-2, Refiled Appeal File (RAF), Tab 8 at 17-18. The duties of the appellant's position include ensuring that the BGCA's chemical operations are conducted securely and meet all regulatory requirements, and that commanders are informed of potential problem areas. IAF, Tab 6 at 84.

¶3      The appellant filed this IRA appeal, alleging that the agency had taken several personnel actions against him in reprisal for his numerous protected whistleblowing disclosures. IAF, Tab 1, 24. Specifically, the appellant alleged that he made the following nine protected disclosures between March 2011 and June 2012:

> (1) On March 9, 2011, he reported to his supervisor, T.F.,[1] that there were drawings of intrusion detection systems (IDS) on a shared computer drive.

---

[1] Shortly before the appellant was hired, Director of Compliance and Surety S.J. was named as the interim Civilian Executive Assistant and T.F. became acting Director of

(2) On March 10, 2011, he notified T.F. and Information Security Manager B.P. that classified information and equipment were located in an unauthorized area of the Emergency Operation Center (EOC).

(3) On March 16, 2011, he notified T.F. and S.J. that employees were handling and transporting classified information without proper documentation.

(4) In April 2011, he told T.F., S.J., and T.R. that possible classified information from secret vulnerability assessments[2] was being placed on an unauthorized medium and that the information was taped for transcribing and discussed with members of the Surety Board and other personnel without clearance or a need to know the information.

(5) From April to October 2011, he informed his supervisors (K.L., S.J., T.R., and BGAD Commander Lieutenant Colonel (LTC) S.B.) that there was classified information on an unclassified medium.

(6) In April 2011, he notified T.F. and S.J. that several BGCA and BGAD personnel had unauthorized access to classified information located in the EOC.

(7) In October 2011, he notified T.F., T.R., and S.J. that there was a possible compromise of confidential duress code[3] information.

(8) On December 29, 2011, he reported to Security Specialist O.G. the unauthorized disclosure of possible classified information from previous vulnerability assessments due to the violation of Army Regulation (AR) 380‑5, Section 2‑6.

(9) In June 2012, he notified Military Intelligence Chief Warrant Officer J.H., per the Army Threat Awareness Reporting Program, of the possible unauthorized disclosure of classified information and alleged that agency managers were subjecting him to a "possible" hostile work environment.

IAF, Tab 22 at 4‑5.

---

Compliance and Surety.  IAF, Tab 21 at 20.  T.F. served in that position until June 2011, when T.R. was appointed Interim Director of Compliance and Surety.  T.R. became Director of Compliance and Surety on September 25, 2011. *Id.* at 20-21.

[2] A vulnerability assessment is a classified document that identifies security deficiencies.  Hearing Transcript at 42-43 (testimony of the appellant).

[3] A duress code is a spoken word or number used by an individual to signal to a security guard or other appropriate personnel that he is being forced to do something under duress.  Hearing Transcript at 58-59 (testimony of the appellant).

¶4        The appellant alleged on appeal that the agency took the following actions against him in reprisal for his disclosures:

(1) In July 2012, BGAD Commander LTC C.G. (S.B.'s successor) changed the appellant's duties and office location.

(2) Beginning in July 2012, C.G., T.R., and W.W. (the latter became the appellant's supervisor following his change in duties and office location), Hearing Transcript (HT) at 586 (testimony of W.W.), denied him security training.

(3) In July 2012, C.G. denied the appellant access to local classified information and restricted areas, and in October 2012, he suspended the appellant's security clearance.

(4) On October 11, 2012, C.G. proposed the appellant's removal.

(5) On December 18, 2012, W.W. notified the appellant that his 2012 performance evaluation would be held in abeyance pending a decision on his proposed removal.

IAF, Tab 24 at 5.

¶5        Following a hearing, the administrative judge issued an initial decision, granting the appellant's request for corrective action regarding his proposed removal and postponed performance evaluation but denying corrective action regarding the other actions. RAF, Tab 37, Initial Decision (ID) at 31. Specifically, the administrative judge found that disclosures (2), (5), (7), and (9) were protected, but that the other disclosures were not protected, ID at 5‑16, that all of the contested actions were covered personnel actions as defined at 5 U.S.C. § 2302(a)(2)(A) except action (3), ID at 16‑19, and that the appellant's protected disclosures were contributing factors in the personnel actions, ID at 19‑21. The administrative judge also found that the agency showed by clear and convincing evidence that it would have changed the appellant's work duties and work location and would have denied him security training absent his protected disclosures. ID at 22‑26. The administrative judge further found, however, that the agency failed to prove by clear and convincing evidence that it would have proposed his removal and postponed his 2012 performance evaluation in the

absence of his protected disclosures. ID at 26‑31. Accordingly, the administrative judge granted the appellant's request for corrective action by ordering the agency to rescind the proposed removal and to issue the appellant's 2012 performance evaluation. ID at 31.

¶6   The agency has filed a petition for review, arguing that none of the appellant's disclosures were protected and that it demonstrated by clear and convincing evidence that it would have taken the same actions in the absence of his disclosures. Petition for Review (PFR) File, Tab 1. The appellant has filed a response to the petition for review and a cross petition for review, arguing that the administrative judge erred in finding that disclosures (1), (3), (4), and (6) were not protected.[4] PFR File, Tab 3 at 16-19. The appellant also challenges the administrative judge's findings that the agency showed by clear and convincing evidence that it would have changed his work duties and office location and would have denied him security training absent his protected disclosures. *Id.* at 19‑25. The agency has filed a reply to the appellant's response. PFR File, Tab 4. In addition, both parties have filed responses to the Board's order to submit evidence on the jurisdictional issue of whether the appellant properly exhausted his administrative remedies with the Office of Special Counsel (OSC) regarding all of the disclosures and actions raised in this appeal. PFR File, Tabs 5‑10.

---

[4] The appellant has not specifically contested the administrative judge's finding that disclosure (8) was not protected. Also, neither party has specifically challenged the administrative judge's findings regarding which contested actions were personnel actions under 5 U.S.C. § 2302(a)(2)(A). Therefore, we have not further considered these issues. *See* 5 C.F.R. § 1201.115 (stating that the Board normally will consider only issues raised in a timely filed petition for review or in a timely filed cross petition for review).

ANALYSIS

¶7     An IRA appeal is authorized by statute only in certain reprisal cases as designated in 5 U.S.C. § 1221. *Miller v. Federal Deposit Insurance Corporation*, 122 M.S.P.R. 3, ¶ 2 (2014), *aff'd*, 626 F. App'x 261 (Fed. Cir. 2015), *cert. denied*, 136 S. Ct. 1510 (2016). All of the material events in this matter occurred before the expansion of IRA appeal rights in the Whistleblower Protection Enhancement Act of 2012 (WPEA), Pub. L. No. 112-199, 126 Stat. 1465, took effect on December 27, 2012. *See* WPEA § 202; *Miller*, 122 M.S.P.R. 3, ¶ 2. Thus, in this case, we will apply the pre‑WPEA standards concerning the scope of an IRA appeal. *See Hooker v. Department of Veterans Affairs*, 120 M.S.P.R. 629, ¶¶ 10‑15 (2014).

¶8     Prior to the WPEA, an eligible individual's entitlement to seek corrective action from the Board in an IRA appeal was limited to covered personnel actions taken or proposed to be taken as a result of a prohibited personnel practice described in 5 U.S.C. § 2302(b)(8), i.e., retaliation for whistleblowing. *Miller*, 122 M.S.P.R. 3, ¶ 2. Under pre‑WPEA law, the Board has jurisdiction over an IRA appeal if the appellant has exhausted his administrative remedies before OSC and makes nonfrivolous allegations of the following: (1) he engaged in whistleblowing activity by making a protected disclosure; and (2) the disclosure was a contributing factor in the agency's decision to take or fail to take a personnel action. *Yunus v. Department of Veterans Affairs*, 242 F.3d 1367, 1371 (Fed. Cir. 2001); *Mason v. Department of Homeland Security*, 116 M.S.P.R. 135, ¶ 7 (2011); *Rusin v. Department of the Treasury*, 92 M.S.P.R. 298, ¶ 12 (2002). After establishing the Board's jurisdiction in a pre‑WPEA IRA appeal, the appellant then must establish a prima facie case of whistleblower retaliation by proving by preponderant evidence that he made a protected disclosure that was a contributing factor in a personnel action taken against him. 5 U.S.C. § 1221(e)(1) (2011); *Mattil v. Department of State*, 118 M.S.P.R. 662, ¶ 11

(2012). If the appellant meets that burden, then the Board shall order such corrective action as it considers appropriate unless the agency shows by clear and convincing evidence that it would have taken the same personnel action in the absence of the protected disclosure. 5 U.S.C. § 1221(e)(1)-(2) (2011); *Chambers v. Department of the Interior*, 116 M.S.P.R. 17, ¶ 12 (2011); *see Mattil*, 118 M.S.P.R. 662, ¶ 11.[5]

The appellant exhausted his remedies with OSC regarding the disclosures and personnel actions that he raises in his IRA appeal.

¶9        The Board may only consider those disclosures of information and those personnel actions that the appellant raised before OSC. *Mason*, 116 M.S.P.R. 135, ¶ 8. An appellant may demonstrate exhaustion through his initial OSC complaint, evidence that the original complaint was amended (including but not limited to OSC's determination letter and other letters from OSC referencing any amended allegations), and the appellant's written responses to OSC referencing the amended allegations. *Id.* Moreover, unlike its Complaints Examining Unit (CEU), OSC's Disclosure Unit (DU) does not review allegations of prohibited personnel practices, and the Board has held that making a disclosure to the DU does not satisfy the exhaustion requirement under 5 U.S.C. § 1214(a)(3). *Id.*, ¶ 16 (citing *Sabbagh v. Department of the Army*, 110 M.S.P.R. 13, ¶¶ 10‑15 (2008); *Clemente v. Department of Homeland Security*, 101 M.S.P.R. 519, ¶¶ 7‑13 (2006)).

---

[5] In the following analysis, we fully address the alleged disclosures and the contributing factor elements prior to addressing whether the agency met its "clear and convincing" burden. Thus, we find that the WPEA's amendments to 5 U.S.C. §§ 1214(b)(4)(B)(ii), 1221(e)(2) are immaterial to the outcome of this appeal. *See* WPEA § 114 (amending those sections to permit a finding on whether the agency met its burden only "after a finding that a protected disclosure was a contributing factor"); *Belykov v. Department of Health & Human Services*, 120 M.S.P.R. 326, ¶ 7 n.3 (2013).

¶10    Because it was unclear from the record whether the appellant had raised all of the disclosures and personnel actions at issue in this appeal before the CEU, the Board ordered him to submit evidence showing which disclosures and personnel actions he raised with that unit.  PFR File, Tab 5.  In response, the appellant asserted that he brought all of the disclosures and personnel actions at issue in this appeal to the CEU's attention via emails to the CEU investigator assigned to his complaint.  PFR File, Tab 7 at 11‑12, 22, 28.  With his response, the appellant submitted those emails along with the documents that he sent to the investigator as email attachments.  *Id.* at 34‑85.  Based on these submissions, we find that the appellant has established that he exhausted his remedies with OSC regarding the disclosures and personnel actions that he raises in this appeal.

The administrative judge correctly found that disclosures (2), (5), (7), and (9) are protected disclosures.

¶11    Pre‑WPEA law defined a protected disclosure as a disclosure of information that an appellant reasonably believes evidences a violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.  5 U.S.C. § 2302(b)(8)(A) (2011); *see, e.g.*, *Linder v. Department of Justice*, 122 M.S.P.R. 14, ¶ 12 (2014).[6]  A reasonable belief exists if a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the appellant could reasonably conclude that the actions of the Government evidence one of the categories of wrongdoing listed in section 2302(b)(8)(A).  *Lachance v. White*, 174 F.3d 1378, 1381 (Fed. Cir. 1999); *Chavez v. Department of Veterans Affairs*, 120 M.S.P.R. 285, ¶ 18 (2013).  To establish that he made a

---

[6] The WPEA amended the definition at 5 U.S.C. § 2302(b)(8)(A)(i) by striking "a violation" and inserting "any violation."  WPEA § 101(a)(1).  We find that this amendment does not change the result in this case.  *See Mudd v. Department of Veterans Affairs*, 120 M.S.P.R. 365, ¶ 5 n.3 (2013).

protected disclosure, the appellant need not prove that the matter disclosed actually established one of the types of wrongdoing listed under section 2302(b)(8)(A); rather, he must show that the matter disclosed was one that a reasonable person in his position would have believed evidenced any of the situations specified in 5 U.S.C. § 2302(b)(8). *Chavez*, 120 M.S.P.R. 285, ¶ 18.

¶12      In the initial decision, the administrative judge found that disclosures (2), (5), (7), and (9) were protected because the appellant reasonably believed that they evidenced a violation of Army regulations and he made those disclosures to individuals who were outside his chain of command.  ID at 8, 12, 14, 16.  The administrative judge found that the remaining disclosures were not protected because the appellant made those disclosures to individuals in his chain of command and he was performing an "essential job duty" by reporting possible security violations to his immediate and second-level supervisors.  ID at 6‑7, 10‑15.

¶13      The agency argues on review that the appellant did not reasonably believe that any of his disclosures evidenced a violation of Army regulations and that, therefore, none of his disclosures were protected.  PFR File, Tab 1 at 13‑18.  In finding that the appellant reasonably believed that he was reporting a violation of Army regulations when he made disclosures (2), (5), (7), and (9), the administrative judge considered the specific regulations implicated in each of those disclosures and the relevant documentary evidence and hearing testimony regarding those disclosures, including the appellant's testimony as to why he believed that the alleged wrongdoing he was disclosing violated Army regulations.  ID at 7‑8, 10‑16.  The agency's assertion on review that the appellant did not reasonably believe that he was disclosing violations of Army regulations constitutes mere disagreement with the administrative judge's findings, which we find no reason to disturb.  *Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 105‑06 (1997) (finding no reason to disturb the administrative

judge's findings when she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions); *Broughton v. Department of Health & Human Services*, 33 M.S.P.R. 357, 359 (1987) (same).

¶14　　We also find unpersuasive the agency's argument that the appellant's disclosures were not protected because he made them as part of his normal duties. PFR File, Tab 1 at 19‑21. The WPEA clarified that disclosures made in the normal course of one's job duties are not excluded from the definition of a protected disclosure. *See* 5 U.S.C. § 2302(f)(2). The Board has found that this clarification of existing law applies retroactively. *Day v. Department of Homeland Security*, 119 M.S.P.R. 589, ¶¶ 9-26 (2013). Therefore, because the appellant reasonably believed that he was disclosing a violation of agency regulations by making disclosures (2), (5), (7) and (9), those disclosures are protected regardless of whether he made them during his normal duties.

¶15　　The agency also argues that the administrative judge improperly applied a subjective, rather than an objective, standard in finding that the appellant reasonably believed that he was disclosing violations of Army regulations. PFR File, Tab 1 at 15. It asserts that the administrative judge applied "circular reasoning" in finding that the appellant's beliefs about security violations were reasonable, *id.*, and may have assumed that the appellant had a reasonable belief simply because he said he had a reasonable belief, *id.* at 18. The initial decision shows, however, that the administrative judge properly applied an objective standard in determining whether the appellant reasonably believed that his disclosures were protected. ID at 16. Therefore, the agency's argument provides no basis to disturb the initial decision.

The administrative judge erred in finding that disclosures (1), (3), (4), and (6) are not protected.

¶16　　In his cross petition for review, the appellant challenges the administrative judge's findings that disclosures (1), (3), (4), and (6) were not protected because reporting possible security violations to his immediate and second‑level

supervisors was one of his essential job duties. PFR File, Tab 3 at 18‑19; ID at 6‑14. The appellant argues that these disclosures are protected even though he made them to his supervisors during the course of his normal duties. PFR File, Tab 3 at 18‑19.

¶17     As previously noted, in *Day*, the Board determined that the WPEA clarified that a disclosure made in the course of an appellant's normal duties is not excluded from whistleblower protection. Given the Board's decision in *Day*, we agree with the appellant that the administrative judge erred in finding that disclosures (1), (3), (4), and (6) were not protected because the appellant made these disclosures in performing his "essential job duty" of reporting suspected security violations to his first‑ and second‑level supervisors. Accordingly, we vacate the administrative judge's finding that these disclosures were not protected because the appellant made them to his supervisors in the course of his normal duties.

¶18     Even though disclosures (1), (3), (4), and (6) are not excluded from protection because the appellant made them in the course of his normal duties, he still must show that these disclosures are otherwise protected to meet his burden that he engaged in whistleblowing activity under 5 U.S.C. § 2302(b)(8). Therefore, we have examined these disclosures, the regulations they implicate, and the other record evidence, including, for example, the appellant's testimony that he informed T.F. and S.J. in April 2011 that some BGCA and BGAD employees in the EOC had access to classified information without proper authorization in violation of AR 380-5.[7]  HT at 50‑56 (testimony of the appellant). Based on our review of the record, we find that the appellant

---

[7] Section 6-1 of AR 380-5 prohibits unauthorized personnel from obtaining access to sensitive or classified information. RAF, Tab 24 at 13‑14.

reasonably believed that he was reporting violations of various Army regulations governing classified information when he made these disclosures.

The agency's claims of bias and denial of the opportunity to cross‑examine the appellant are not persuasive.

¶19    The agency raises an apparent claim of bias on review, arguing that the administrative judge's "tone and substance" throughout much of the proceeding was "unnecessarily and inappropriately demeaning" toward agency counsel. PFR File, Tab 1 at 17 n.14. In making a claim of bias or prejudice against an administrative judge, a party must overcome the presumption of honesty and integrity that accompanies administrative adjudicators. *Oliver v. Department of Transportation*, 1 M.S.P.R. 382, 386 (1980). An administrative judge's conduct during the course of a Board proceeding warrants a new adjudication only if her comments or actions evidence "a deep‑seated favoritism or antagonism that would make fair judgment impossible." *Bieber v. Department of the Army*, 287 F.3d 1358, 1362‑63 (Fed. Cir. 2002) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)); *Smets v. Department of the Navy*, 117 M.S.P.R. 164, ¶ 15 (2011), *aff'd*, 498 F. App'x 1 (Fed. Cir. 2012). The agency's allegations on review, which do not relate to any extrajudicial conduct by the administrative judge, neither overcome the presumption of honesty and integrity that accompanies an administrative judge nor establish that she showed a deep‑seated favoritism or antagonism that would make fair judgment impossible.

¶20    The agency also argues on review that the administrative judge thwarted its efforts to cross‑examine the appellant regarding whether he reasonably believed that he was reporting violations of Army regulations. PFR File, Tab 1 at 15‑18. An administrative judge has broad discretion to control the proceedings before her. *See Key v. General Services Administration*, 60 M.S.P.R. 66, 68 (1993). A review of the hearing record does not show that the agency's cross‑examination of the appellant was improperly limited, and the agency has not shown that the

administrative judge committed reversible error in this regard. *See Nero v. Department of the Treasury*, 23 M.S.P.R. 325, 327 (1984).

The administrative judge correctly found that the appellant proved that his protected disclosures were a contributing factor in the personnel actions.

¶21    To prevail in an IRA appeal before the Board, an appellant must prove by preponderant evidence that his disclosure was a contributing factor in a personnel action. *Chavez*, 120 M.S.P.R. 285, ¶ 27. The term "contributing factor" means any disclosure that affects an agency's decision to threaten, propose, take, or not take a personnel action regarding the individual making the disclosure. *Usharauli v. Department of Health & Human Services*, 116 M.S.P.R. 383, ¶ 31 (2011); 5 C.F.R. § 1209.4(d). The most common way of proving the contributing factor element is the "knowledge/timing test." *Chavez*, 120 M.S.P.R. 285, ¶ 27. Under that test, an appellant can prove that his disclosure was a contributing factor in a personnel action through evidence that the official taking the personnel action knew of the whistleblowing disclosure and took the personnel action within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action. *Id.* Once an appellant has satisfied the knowledge/timing test, he has demonstrated that a protected disclosure was a contributing factor in a personnel action. *Gonzalez v. Department of Transportation*, 109 M.S.P.R. 250, ¶ 20 (2008).

¶22    Regarding the contributing factor element of the appellant's IRA appeal, the administrative judge found that C.G. was responsible for the personnel actions at issue and that he was "well aware" of the appellant's protected disclosure regarding the "spillage"[8] of classified information. ID at 20 (citing HT at 423‑58 (testimony of C.G.)); ID at 29 (stating that, although C.G. was not the BGAD commander at the time of the appellant's disclosures, he was well aware of them).

_____

[8] Generally, "spillage" is the transfer of classified or other sensitive information into an information system that is not approved or authorized for the use of such information.

In that regard, the administrative judge noted that C.G. stated in an affidavit that he had asked O.G. to investigate the appellant's security concerns regarding the spillage of classified information. ID at 20 (citing IAF, Tab 6 at 11‑15). The administrative judge also noted that, at the conclusion of his July 2012 security inspection at the BGCA, O.G. issued a report addressing the appellant's concerns and discussed the report with C.G., who read it. *Id.*

¶23    On review, the agency challenges the administrative judge's finding that C.G. knew of the appellant's disclosures when he took the personnel actions at issue. The agency argues that C.G. only had a "vague knowledge" that the appellant had expressed concerns about classified information, but he was not aware of any particular disclosures. PFR File, Tab 1 at 5; *id.* at 22 (stating that C.G. only had a vague knowledge about information relating to the email pertaining to disclosure (1)).

¶24    Assuming arguendo that C.G. was unaware of the specifics of the appellant's disclosures, the record shows that, at the time of the personnel actions in question, C.G. had a general knowledge of the appellant's allegations of wrongdoing. In that regard, we note that in a written statement accompanying the appellant's notice of proposed removal, C.G. stated that, during an "inbrief" meeting that preceded O.G.'s July 2012 inspection, he directed O.G. to investigate the appellant's allegations regarding the storage and "spillage" of classified material. IAF, Tab 6 at 18. Thus, we find that the administrative judge properly found that the appellant established the knowledge prong of the knowledge/timing test.

¶25    Regarding the timing prong of the knowledge/timing test, the administrative judge found that, because the personnel actions took place "virtually immediately" after O.G. left the BGAD, they occurred within a period of time such that a reasonable person could conclude that the disclosure or protected activity was a contributing factor in the personnel actions. ID at 20‑21.

We agree. The disclosures at issue in this appeal occurred between March 2011 and June 2012, and the personnel actions took place between July and December 2012. The Board has held that a personnel action that occurs within 2 years of the appellant's disclosure satisfies the timing prong of the knowledge/timing test. *See Agoranos v. Department of Justice*, 119 M.S.P.R. 498, ¶ 23 (2013). Thus, we discern no reason to disturb the administrative judge's finding that the appellant proved the contributing factor element of his appeal.

Because the administrative judge correctly found that the agency's denial of the appellant's access to restricted areas and classified documents was not a covered personnel action, she improperly conducted a clear and convincing analysis regarding that action.

¶26    When an appellant meets his burden to establish a prima facie case of reprisal for whistleblowing, the burden shifts to the agency to prove by clear and convincing evidence that it would have taken the same personnel actions in the absence of the appellant's whistleblowing. *Mattil*, 118 M.S.P.R. 662, ¶ 11; *Jenkins v. Environmental Protection Agency*, 118 M.S.P.R. 161, ¶ 16 (2012). Clear and convincing evidence is "that measure or degree of proof that produces in the mind of the trier of fact a firm belief as to the allegations sought to be established." 5 C.F.R. § 1209.4(e). In determining whether an agency has met this burden, the Board will consider the following factors: (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999); *Jenkins*, 118 M.S.P.R. 161, ¶ 16. Our reviewing court has held that evidence only clearly and convincingly supports a conclusion when it does so in the aggregate considering all the pertinent evidence in the record and despite the evidence that

fairly detracts from that conclusion. *Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012).

¶27 As the administrative judge explained in the initial decision, on July 17‑18, 2012, O.G. conducted an inspection of the BGCA. ID at 22. O.G. issued a report summarizing the results of the inspection, which identified various security deficiencies, IAF, Tab 6 at 72‑81, and he notified C.G. that the appellant had made the following statement when O.G. notified him of the inspection results: "This is what the Command gets for not listening to me," *id.* at 67. C.G. testified that O.G. informed him that the appellant had made this comment and had failed the inspection intentionally. HT at 426 (testimony of C.G.). The administrative judge found that the agency suspended the appellant's access to classified information and secured areas effective July 23, 2012, based on O.G.'s statements regarding the appellant. ID at 25; IAF, Tab 6 at 71.

¶28 Notwithstanding her determination that the denial of the appellant's access to classified information and restricted areas was not a personnel action under the Whistleblower Protection Act (WPA), ID at 17‑18; *see* 5 U.S.C. § 2302(a)(2)(A), the administrative judge found that, because C.G. took this action based on his belief that the appellant intentionally wanted to hurt the Command, the agency showed by clear and convincing evidence that the agency would have taken the same action absent the appellant's whistleblowing activities, ID at 25. Given her correct finding that the denial of the appellant's access to restricted areas and classified documents was not a personnel action under the WPA,[9] it was

---

[9] In making this finding, the administrative judge noted that the Board has held that security clearance determinations are not personnel actions under the WPA, as amended. ID at 18 (citing *Roach v. Department of the Army*, 82 M.S.P.R. 464, ¶¶ 44-54 (1999)). The administrative judge reasoned that, because the suspension of the appellant's access to classified documents and restricted areas effectively suspended his security clearance, those actions are not personnel actions either. *Id.* (citing *Hesse v. Department of State*, 217 F.3d 1372, 1377 (Fed. Cir. 2000)).

inappropriate for the administrative judge to determine whether the agency proved by clear and convincing evidence that it would have taken the same action in the absence of the appellant's whistleblowing.  *See Clarke v. Department of Veterans Affairs*, [121 M.S.P.R. 154](#), ¶ 19 n.10 (2014) (stating that the Board may not proceed to the clear and convincing evidence test unless it has first determined that the appellant established his prima facie case), *aff'd*, 623 F. App'x 1016 (Fed. Cir. 2015).  Accordingly, we vacate the administrative judge's findings that the agency proved by clear and convincing evidence that it would have denied the appellant access to restricted areas and classified documents absent his whistleblowing.

The agency proved by clear and convincing evidence that it would have changed the appellant's work duties and work location and would have denied him security training absent his whistleblowing activities.

¶29        The administrative judge also found that the agency proved by clear and convincing evidence that it would have changed the appellant's work duties and work location and denied him security training in the absence of his disclosures.  ID at 26.  In making this finding, the administrative judge reasoned that, because the appellant's position required access to classified documents and secured areas, the lack of such access necessitated a change in his duties and work location.   ID at 25; IAF, Tab 6 at 91.   Similarly, the administrative judge reasoned that, because the appellant was no longer performing a security function for the agency, he did not need to receive security training.  ID at 25.  In other words, the administrative judge found that the agency met its clear and convincing burden regarding the appellant's change in duties and work location and the denial of security training because those personnel actions were a consequence of the denial of access to classified documents and restricted areas, and the agency had met its clear and convincing evidence burden regarding that action.

¶30    Given our finding that it was inappropriate for the administrative judge to conduct a clear and convincing analysis concerning the denial of access to classified documents and restricted areas, and that such analysis was the basis for her finding that the agency met its clear and convincing burden regarding the change in the appellant's work duties and work location and the denial of security training, we find the administrative judge's clear and convincing analysis of those personnel actions problematic as well. Accordingly, we vacate the administrative judge's clear and convincing analysis regarding those actions.

¶31    Nonetheless, based on our analysis of the *Carr* factors, we agree with the administrative judge that the agency met its clear and convincing evidence burden regarding the change in the appellant's work duties and work location and the denial of security training. The third *Carr* factor is not significant, as there appears to be no evidence of similarly situated nonwhistleblowers. As for the remaining *Carr* factors, although there was some motive to retaliate against the appellant on the part of the agency officials involved in these actions (i.e., C.G., T.R., and W.W.) for his disclosures of alleged security violations, *see Whitmore*, 680 F.3d at 1371 (stating that highly critical accusations regarding an agency's conduct can be evidence of retaliatory motive), we find that the evidence in support of these actions was very strong and outweighed any motive to retaliate. As the administrative judge explained, because the appellant's position required access to classified documents and secured areas, the lack of such access necessitated a change in the appellant's work duties and location, and there was no reason for him to receive security training because he was no longer performing a security function. ID at 25; IAF, Tab 6 at 91. In addition, there is no evidence that the appellant requested training, and, in any event, the hearing testimony indicated that funds were not available for training. HT at 615-16 (testimony of T.R.).

<u>The administrative judge correctly found that the agency has failed to prove by clear and convincing evidence that it would have proposed the appellant's removal and postponed his 2012 performance evaluation in the absence of his protected disclosures.</u>

¶32    In assessing whether the agency met its burden of showing by clear and convincing evidence that it would have proposed the appellant's removal and postponed his performance evaluation in the absence of his protected disclosures, the administrative judge considered the following four charges set forth in the notice of proposed removal:  (1) making false statements; (2) making statements with the intent to disparage the BGCA command; (3) failure to follow established rules and procedures; and (4) conduct unbecoming a Federal employee. ID at 26‑31; IAF, Tab 6 at 17‑20.

¶33    The administrative judge noted that the first charge was supported by two specifications, which alleged as follows:  (1) the appellant stated to O.G. that he was unaware of the requirement for courier cards;[10] and (2) the appellant denied to T.R. that he had made the comment, "This is what the Command gets for not listening to me."  ID at 26; IAF, Tab 6 at 17.  The administrative judge credited the appellant's testimony denying that he had made the statement described in the first specification, finding that it was "totally improbable" that the appellant would have made that statement, as he had brought the requirement for courier cards to management's attention as early as March 2011.  ID at 26‑27; IAF, Tab 6 at 42.  As for the second specification, the administrative judge found it reasonable that the appellant did not remember making the comments about the Command when he was interviewed by T.R.  ID at 27.

¶34    Turning to the second charge—making statements with intent to disparage the BGCA—the administrative judge noted that this charge involved an

---

[10] A courier card is an identification card that allows an individual to transport classified information.  HT at 40 (testimony of the appellant).

August 21, 2012 email from the appellant to W.W. stating that BGCA leadership had "no reason or training to make decisions." ID at 27; IAF, Tab 6 at 38. The administrative judge found that the record does not indicate that management ever discussed the tone of the appellant's emails to his superiors with him, nor is there any evidence that the appellant created the email with the intent to disparage the BGCA Command. ID at 27 (citing HT at 625 (testimony of T.R.)).

¶35    As for the charge of failure to follow established regulations and procedures, the administrative judge noted that the charge was supported by four specifications, which alleged that the appellant had committed the following security violations: (1) failure to conduct security compliance checks as required; (2) failure to mark classified material as required; (3) failure to ensure that courier cards are used in the transportation of classified materials; and (4) deletion of an IDS drawing containing classified information without requesting a preliminary inquiry. ID at 27‑28; IAF, Tab 6 at 17. The administrative judge noted that these specifications were essentially a list of the security violations O.G. had found during his inspection, ID at 27; IAF, Tab 6 at 72‑81, and she found that each specification was related directly to the issues the appellant had raised with his superiors as potential security violations, ID at 28. The administrative judge also noted that the appellant was never counseled and received excellent performance ratings, with the exception of the period in which his performance evaluation was held in abeyance. *Id.*; IAF, Tab 22 at 22‑23, Tab 23 at 37‑41.

¶36    Regarding the charge of conduct unbecoming a Federal employee, the administrative judge noted that, in support of this charge, the agency alleged that the appellant tried to shift the blame for his failures as BGCA Security Manager by telling O.G., "This is what the Command gets for not listening to me." ID at 28; IAF, Tab 6 at 17. The administrative judge noted that T.R. investigated these comments at C.G.'s request and T.R. concluded that the appellant did not

fail the inspection deliberately. ID at 28; IAF, Tab 23, Exhibit (Ex.) X at 7. As for whether the appellant was responsible for the security failures identified by O.G., the administrative judge noted that T.R.'s investigation concluded that the order appointing the appellant BGCA Security Manager should have been rescinded upon the appointment of B.F. as "Command Information Security Manager" in March 2012. ID at 29; IAF, Tab 23, Ex. X at 7.

¶37        Applying the factors set forth in *Carr*, the administrative judge found that the evidence in support of the agency's proposed removal was "extremely weak." ID at 29. In support of this finding, the administrative judge determined that the appellant tried to perform the duties of his position by making security compliance checks and bringing security issues to his supervisors' attention. *Id.* In that regard, the administrative judge noted that the appellant testified without contradiction that he tried to mark classified material as required, raised the issue of the courier cards, and performed the duties required of him for the issuance of those cards. *Id.* The administrative judge also noted that C.G. and T.R. disagreed about whether the appellant was responsible for resolving the security issues that were the subject of the failure to follow procedures charge. *Id.* (citing HT at 497‑507 (testimony of T.R.); HT at 601‑22 (testimony of C.G.); IAF, Tabs 23‑24, Exs. N‑O, Q, R, X).[11] The administrative judge noted that the

---

[11] The agency argues on review that the documents the administrative judge cited, to support her finding that T.R. disagreed with C.G. about whether the appellant was responsible for the duties in question, do not support such a finding. PFR File, Tab 1 at 23‑24. Based on our review of these documents, we agree with the agency that the portions of the hearing transcript the administrative judge cited do not support her conclusion that C.G. and T.R. disagreed about whether the appellant was responsible for the inspection failures. ID at 29 (citing HT at 497‑507 (testimony of C.G.), HT at 601‑22 (testimony of T.R.)). We find evidence of such disagreement elsewhere in the record, however. *Compare* HT at 443 (testimony of C.G. stating that the appellant was responsible for the problems identified in the inspection), *with* IAF, Tab 23, Ex. X at 54 (T.R.'s statement that the appellant's appointment as BGCA

Interservice Support Agreement between BGCA and BGAD provides that BGAD is responsible for implementing security services and BGCA will appoint a liaison. ID at 29‑30; IAF, Tab 23, Ex. Q at 15. The administrative judge found that B.F., as BGAD Security Officer, was responsible for, inter alia, Intrusion Detection Systems, Security and Identification Badge Control, and personnel and information security; however, there is no evidence that the agency ever proposed discipline against B.F. ID at 30; IAF, Tab 23, Ex. Q at 15‑16.

¶38     Turning to the second *Carr* factor, the administrative judge found that the appellant's disclosures and the reasons for his proposed removal were "inextricably intertwined" inasmuch as discipline was proposed against the appellant for the same security concerns that were the subject of his disclosures. ID at 31. The administrative judge found that C.G. had a motive to retaliate because the appellant was charged with violating agency security procedures regarding the same concerns that he was bringing to management's attention. ID at 29; *see Whitmore*, 680 F.3d at 1371.

¶39     As for the third *Carr* factor, the administrative judge found that the agency did not show that it took similar actions against nonwhistleblowers. ID at 29. The administrative judge therefore found that the agency failed to show by clear and convincing evidence that it would have proposed the appellant's removal and would have postponed his 2012 performance evaluation absent his whistleblowing activities. ID at 31.

¶40     The agency challenges this finding on review, arguing that it proved all of the charges and specifications by preponderant evidence, and that the strength of its case shows that it would have proposed the appellant's removal regardless of

Security Manager should have been rescinded upon B.F.'s appointment as BGAD Security Officer in March 2012).

his disclosures.[12]  PFR File, Tab 1 at 22‑25.  Other than the agency's general assertion that it proved all four charges, the agency on review does not address charges one and two.  Thus, the agency does not challenge the administrative judge's findings regarding those charges.  Based on our review of the evidence, we discern no reason to disturb the administrative judge's analysis of the first two charges or her implicit finding that the evidence in support of those charges is weak.

¶41    Regarding charge three, the agency asserts that the administrative judge refused to hold the appellant accountable for the inspection failures by ruling that he had no responsibilities beyond inspecting and reporting security violations. *Id.* at 22.  The agency asserts that this ruling is an abuse of discretion given the "overwhelming evidence" that the appellant was responsible for the inspection failures.  *Id.*  In support of this claim, the agency asserts as follows:  (1) the appellant's position description specifically states that his duties include assuring that appropriate corrective actions are taken to rectify security deficiencies, *id.* at 23; IAF, Tab 6 at 92; (2) the appellant's evaluation support form states that his duties include ensuring compliance with mandated and approved security procedures, and ensuring that the organization is fully prepared for all internal and external security audits/inspections, PFR File, Tab 1 at 23‑24 (citing IAF, Tab 6 at 86, 88); (3) several witnesses, including O.G. and C.G., testified that the appellant was responsible for the failures, *id.* at 23 (citing RAF, Tab 11 at 14); (4) during his hearing testimony, the appellant acknowledged that his duties included ensuring compliance with security procedures, *id.* at 23 (citing HT at 16

---

[12] The agency's arguments on review regarding the clear and convincing element as it pertains to the proposed removal and postponed performance evaluation are limited to the second *Carr* factor, i.e., the strength of its evidence in support of the appellant's proposed removal.  Based on our review of the record, we find no reason to disturb the administrative judge's findings regarding the remaining two *Carr* factors.

(testimony of the appellant)); and (5) a report issued by the Pentagon concluded that the security responsibilities were the appellant's primary duties and responsibilities, *id.* at 24 (citing RAF, Tab 11 at 16). Thus, the agency essentially argues that the evidence in support of removing the appellant was strong because he was responsible not only for alerting management to security violations but also for correcting them, and he failed to do so.

¶42 Even if the appellant were responsible for the security violations cited in charge three, we find that the evidence in support of proposing the appellant's removal for these violations was not strong, given his efforts to address the security failures at issue in this charge by attempting to mark classified material and ensure that personnel who transported classified information were using courier cards, as well as his performance record. We also find disingenuous the agency's assertion that those violations warranted the appellant's removal, given management's failure to address the security problems that the appellant raised. As the administrative judge noted in the initial decision, if the violations identified in this charge were serious enough to warrant the appellant's removal, it "begs the question" as to what actions his supervisors took to ensure that the security issues the appellant brought to management's attention were rectified. ID at 28.

¶43 Regarding charge four, which the agency characterizes as "the most important charge," the agency alleges that the administrative judge erred by refusing to "support the charge" based on her conclusion that the appellant did not intend to injure the Command or fail O.G.'s inspection. PFR File, Tab 1 at 22. The agency asserts that it did not charge the appellant with attempting to injure the Command or fail the inspection but, rather, with trying to shift the blame for his failures as BGCA Security Manager by telling O.G., "This is what the Command gets for not listening to me." *Id.*

¶44 Although we agree with the agency that this charge did not require proof that the appellant made the comment at issue with the intention of injuring the

Command, we disagree with the agency's apparent assertion on review that the evidence in support of charge four was strong. Significantly, the agency did not merely allege that the appellant made the comment set forth in this charge. Rather, it alleged that he made the comment in an effort to shift responsibility for his alleged failures to the agency. IAF, Tab 6 at 17. Thus, to prove this charge, the agency was required to show that the appellant made the comment with the intention of shifting responsibility for the security failures cited by O.G. to the agency. Based on her review of the relevant evidence and testimony, the administrative judge found that the comment in question was an "off‑the‑cuff" remark that the appellant easily could have forgotten. ID at 24. We discern no reason to disturb this finding. Given these circumstances, we find that the evidence does not support a finding that the appellant made this comment with the intention of shifting blame for his alleged failures to the agency. Accordingly, we agree with the administrative judge's implicit finding that the evidence in support of this charge was weak. ID at 28‑29; *see Crosby*, 74 M.S.P.R. at 105‑06; *Broughton*, 33 M.S.P.R. at 359.

¶45    The agency also argues on review that it showed by clear and convincing evidence that it would have proposed the appellant's removal absent his protected disclosures because his removal from the Unescorted Access Program (UAP)[13] alone warranted his removal. PFR File, Tab 1 at 24. The agency contends that the requirements for removing the appellant based on a charge of failure to maintain a condition of employment were clearly met in this case because his position description states that a UAP is required to maintain his position, and he admitted that he lost his UAP. *Id.*

---

[13] The UAP allows approved individuals unescorted access inside the fence line of BGCA's Chemical Limited Area. IAF, Tab 6 at 12.

¶46       The agency, however, did not charge the appellant with failure to maintain a condition of employment.  IAF, Tab 6 at 17‑21.  It is well established that the Board will not sustain an agency action on the basis of a charge that could have been brought but was not.  *Rodriguez v. Department of Homeland Security*, 117 M.S.P.R. 188, ¶ 8 (2011).  Consequently, the appellant's alleged failure to maintain a condition of employment does not provide a basis for disturbing the administrative judge's findings concerning the strength of the evidence in support of the agency's action.

¶47       In sum, we agree with the administrative judge that the evidence presented by the agency in support of the appellant's proposed removal was weak, the agency had a motive to retaliate against the appellant, and there is no evidence that the agency took similar actions against similarly situated employees who were not whistleblowers.  Accordingly, we find no reason to disturb the administrative judge's finding that the agency failed to prove by clear and convincing evidence that it would have proposed the appellant's removal and postponed his 2012 performance evaluation in the absence of his protected whistleblowing.

## ORDER

¶48       We ORDER the agency to rescind the proposed removal and issue the appellant's 2012 performance evaluation, along with any awards, bonuses, or similar items that result from the performance evaluation.  *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984).  The agency must complete this action no later than 20 days after the date of this decision.

¶49       We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Back Pay Act and/or Postal Service Regulations, as appropriate, no later than 60 calendar days after the date of this decision.  We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits

due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶50 We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and to describe the actions it took to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶51 No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision in this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶52 For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

¶53 This is the final decision of the Merit Systems Protection Board in this appeal. Title 5 of the Code of Federal Regulations, section 1201.113(c) (5 C.F.R. § 1201.113(c)).

NOTICE TO THE APPELLANT
REGARDING YOUR RIGHT TO REQUEST
ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs.  To be paid, you must meet the requirements set out at title 5 of the United States Code (U.S.C.), sections 7701(g), 1221(g), 1214(g) or 3330c(b); or  38 U.S.C.  § 4324(c)(4).    The  regulations  may  be  found  at  5 C.F.R. §§ 1201.201,  1202.202,  and  1201.203.    If  you  believe  you  meet  these requirements, you must file a motion for attorney fees WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION.  You must file your attorney fees motion with the office that issued the initial decision on your appeal.

NOTICE TO THE APPELLANT REGARDING
YOUR RIGHT TO REQUEST CONSEQUENTIAL AND/OR
 COMPENSATORY DAMAGES

You  may  be  entitled  to  be  paid  by  the  agency  for  your  consequential damages,  including  medical  costs  incurred,  travel  expenses,  and  any  other reasonable and foreseeable consequential damages. To be paid, you must meet the requirements set out at 5 U.S.C. §§ 1214(g) or 1221(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202 and 1201.204.

In  addition,  the  Whistleblower  Protection  Enhancement  Act  of  2012 authorized  the  award  of  compensatory  damages  including  interest,  reasonable expert witness fees, and costs. 5 U.S.C. § 1214(g)(2).

If  you  believe  you  meet  these  requirements,  you  must  file  a  motion  for consequential damages and/or compensatory damages WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion with the office that issued the initial decision on your appeal.

NOTICE TO THE PARTIES

A  copy  of  the  decision  will  be  referred  to  the  Special  Counsel  "to investigate and take appropriate action under [5 U.S.C.] section 1215," based on

the determination that "there is reason to believe that a current employee may have committed a prohibited personnel practice" under 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), (b)(9)(B), (b)(9)(C), or (b)(9)(D).  5 U.S.C. § 1221(f)(3).

NOTICE TO THE APPELLANT REGARDING
YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the U.S. Court of Appeals for the Federal Circuit.

The court must receive your request for review no later than 60 calendar days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.  The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you want to request review of the Board's decision concerning your claims of prohibited personnel practices under 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), (b)(9)(B), (b)(9)(C), or (b)(9)(D), but you do not want to challenge the Board's disposition of any other claims of prohibited personnel practices, you may request the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction to review this final decision.  The court of appeals must receive your petition for review within 60 days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(B) (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.  You may choose to request review of the Board's decision in the U.S. Court of Appeals for the Federal Circuit or any other court of appeals of competent jurisdiction, but not both.  Once you choose to seek review in one court of appeals, you may be precluded from seeking review in any other court.

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right.  It is found in title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff.

Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode/htm. Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11. Additional information about other courts of appeals can be found at their respective websites, which can be accessed through http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

FOR THE BOARD:


_____
Jennifer Everling
Acting Clerk of the Board


AS CHECKLIST: INFORMATION REQUIRED BY IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES

## CIVILIAN PERSONNEL OFFICE MUST NOTIFY CIVILIAN PAYROLL OFFICE VIA COMMAND LETTER WITH THE FOLLOWING:

1. Statement if Unemployment Benefits are to be deducted, with dollar amount, address and POC to send.

2. Statement that employee was counseled concerning Health Benefits and TSP and the election forms if necessary.

3. Statement concerning entitlement to overtime, night differential, shift premium, Sunday Premium, etc, with number of hours and dates for each entitlement.

4. If Back Pay Settlement was prior to conversion to DCPS (Defense Civilian Pay System), a statement certifying any lump sum payment with number of hours and amount paid and/or any severance pay that was paid with dollar amount.

5. Statement if interest is payable with beginning date of accrual.

6. Corrected Time and Attendance if applicable.

## ATTACHMENTS TO THE LETTER SHOULD BE AS FOLLOWS:

1. Copy of Settlement Agreement and/or the MSPB Order.

2. Corrected or cancelled SF 50's.

3. Election forms for Health Benefits and/or TSP if applicable.

4. Statement certified to be accurate by the employee which includes:

    a. Outside earnings with copies of W2's or statement from employer.
    b. Statement that employee was ready, willing and able to work during the period.
    c. Statement of erroneous payments employee received such as; lump sum leave, severance pay, VERA/VSIP, retirement annuity payments (if applicable) and if employee withdrew Retirement Funds.

5. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts.

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

   a. Employee name and social security number.
   b. Detailed explanation of request.
   c. Valid agency accounting.
   d. Authorized signature (Table 63)
   e. If interest is to be included.
   f. Check mailing address.
   g. Indicate if case is prior to conversion.  Computations must be attached.
   h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected. (if applicable)

## Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement. (if applicable)

2. Copies of SF-50's (Personnel Actions) or list of salary adjustments/changes and amounts.

3. Outside earnings documentation statement from agency.

4. If employee received retirement annuity or unemployment, provide amount and address to return monies.

5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)

6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.

7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases: (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

   a. Must provide same data as in 2, a-g above.
   b. Prior to conversion computation must be provided.
   c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.